May it please the court, my name is Chris Wadley. I represent Westport Insurance Corporation in this matter. I intend to reserve three minutes, although I understand it's my responsibility to monitor that. Your honors, the district court erred in three respects in this case. First, it erred in finding that exclusion B is ambiguous. Second, it erred in finding that exclusion B did not bar coverage for the underlying malpractice claim in this case. And third, it erred when it found that in order for exclusion B to apply, the insurance company would have to show that it was prejudiced with respect to the timing of the notice of the underlying claim. First, with respect to the ambiguity issue, the exclusion B clearly excludes coverage for any claim that arises out of an act, error, omission, or circumstance that occurs prior to the effective date of the policy, if on the effective date of the policy, the insured could reasonably foresee that the act, error, omission, or circumstance might be the basis of the claim. Every court that has considered this particular exclusion or similarly worded exclusions, including this court in Weddington, as well as several lower courts applying Washington law, have found that it's unambiguous and that it gives rise to a two-step inquiry. So you would say that, I take it, that anyone can see that when your client's case is dismissed and you're actually sanctioned for having brought it, anybody can see that it might give rise to a claim. Absolutely. That's your argument in a nutshell. That is the argument in a nutshell. And that you don't, there's no ambiguity in the exclusion. And this seems to be where the lower court got a little bit mixed up, is that it thought that it needed to go back and look at all these different potential trigger dates and say, well, the policy doesn't tell me which particular trigger date tells me when there's sufficient knowledge of a potential claim here. Was it when they filed the answer? Was it when they filed the motion? And so, since it's ambiguous, I'm gonna push it all the way back to the last date and that's when the appellate court affirms the dismissal of the claim and say, well, since that happened in the second policy period, then the notice of the claim is fine. Let's suppose that the court that rendered the decision and imposed sanctions, had a reputation for over-the-top award of sanctions and the individual attorney is absolutely convinced that this will be reversed on appeal. He still must give notice that this might trigger a claim? I would submit that absolutely. I mean, I think any time that there's a court opinion, whether you agree with it or disagree with it, that dismisses your client's claim specifically on the grounds that you, as the attorney, failed to perform a reasonable investigation to determine the proper identification of the defendant, that's a reasonable basis to believe that there might be a claim arising out of that. The insured is not entitled to assume that that's gonna be reversed, whether the court has a reputation for over-the-top or otherwise, because at that point, they're banking on a reversal, and again, I hope this case is reversed, but I think we all know that the majority of cases are not gonna be reversed, especially on a discretionary matter like that in the trial court. I'm not suggesting that the facts of this case are what I described in my hypothetical, but possibly at some level, the might might be interpreted differently. I suppose it could be, and we could, I'm sure, come up with plenty of hypothetical situations, but we do have a set of facts in front of us that are pretty clear. The insured in this case. What happens if you have a client who is just a very difficult client to deal with, loses the case, you lose the case on the merits, and the client probably deserved to lose the case? Client's unhappy and just says, I'm gonna sue your socks off. Now, do you have to take that, even if you know that there's gonna be no merit to this, that you've given best efforts and you just did a bang-up job, you just had things running against you, you still have an obligation to turn that into the insurance company? Absolutely. And are there consequences for doing that? In other words, if a lawyer begins to get a little nervous about whether he's going to be covered, and therefore, anytime a client sort of looks crosswise at him, he goes to the insurance company and says, well, my client wrinkled his nose at me, and therefore, I guess there's a possibility he could bring a frivolous suit against me, but I gotta get this into you before the expiration of the policy. Are there consequences to the attorney for turning those kinds of things in that suggest that it's sort of unfair for an attorney in that position to be turning in every conceivable lawsuit that could be brought? I don't think that there are in this, I mean, there are good consequences in one sense, in the sense that under these so-called claims after termination clauses, if you report a potential claim during the policy period, then it really doesn't matter when the claim is made, it's all gonna relate back to when you report it. That suggests that the attorney should be willing to sort of oversubscribe. The problem is that because this is a claims-made policy, it's reviewed every year, which gives the insurance company control over the premiums, over being able to adjust the premiums from year to year to year, and therefore, what? The following year, you turn in a bunch of stuff and it all turns out to have been frivolous and most of it wasn't filed, but now you're obviously a high-risk attorney, so your premiums go up. Well, my understanding, again, I'm not an underwriter, and I don't know what the particular facts, I mean, there's not anything in that nature in this particular record, but my understanding is that, you know, they'll open up a claim, obviously, a file, and then they'll obviously track whether any loss is incurred. I mean, most of the times, if it's just a notice of a potential claim, a claim file is open and it just kind of sits there and the claims handler monitors it, and then come renewal time, they'll look at if there's any loss that's been paid or anything like that, and if there hasn't been any loss, then generally, that's not something that's factored into a premium increase. That's not necessarily the way insurance companies look at it. I used to represent insurance companies, and you'd say, well, this guy has got clients who appear to not have full confidence in him, and he's reporting this and this. We just won't renew. Not gonna be on our watch. Well, I mean, that is actually a good point, but, I mean, isn't the- Well, that's the way the real world is. But getting kind of to the case that was just argued before you, the insurance company is in the business of assessing risk, and if a particular attorney presents himself to be a higher risk for whatever reason, because he takes problematic clients, because he takes particular cases that lend themselves to more malpractice claims, those are the types of things that insurance companies are entitled to know so that they can properly calculate the premium and assess what the risk is going to be going forward. And so, yes, it may be unfortunate for the particular attorney in a particular circumstance if he just happens to have a difficult client that threatens to sue him for no good reason, but that goes to the heart of the risk that is being purchased with the insurance company and the risk that's being transferred to the insurance company, and the insurance company's entitled to know all the factors that the insured knows that can go towards its risk. Well, now, here, apparently, the district court thought that might was ambiguous, so I guess that's maybe where we need to be directing our attention. With due respect to the district court, I don't think the word might is ambiguous. I think the court's problem was it confused breadth with ambiguity. Certainly, the word might is broad in the sense that it does exclude coverage for circumstances that a reasonable attorney would foresee might be the basis of a claim, so it possibly, there's probably a lot of different types of circumstances that might fall within that umbrella, but that doesn't mean it's ambiguous. Ambiguous means that it's subject to more than one reasonable interpretation, and I'm not aware of any court that has found, other than this one, not this one, but the district court, that has found the word might in an exclusion like this to be ambiguous. As other courts have found, it denotes a possibility, something less than a likelihood, and the check, the operative check on what needs to be reported or what triggers the exclusion is the reasonableness standard. Would an objective, reasonable attorney, knowing the cumulative amount of facts that he's aware of at the time that he purchases the policy, foresee a possible claim? If he could, that's something that must be disclosed on the application. If it is, then there's gonna be, that constitutes a report of a potential claim during the policy period, the existing policy period, and it's not gonna be covered under the subsequent policy period, and that fact, too, is actually made clear in the application. The insurance application, when Mr. Camatomo renews, asks if he's aware of any of these ex aerosol emissions that might reasonably be the basis of a claim, and it specifically tells him on the signature block that any policy that's issued is going to exclude coverage for ex aerosol emissions that a reasonable attorney could foresee might be the basis of a claim. And so, that's how these policies operate, and in order to stretch the word and rewrite it and try to, you know, come up with ambiguity here really kind of destroys the whole framework of how these policies work. So, moving on to the second point here is whether the exclusion bars coverage. We think the facts are clear. When there's an error that's this egregious that leads to sanctions with an express finding that there was no reasonable investigation, we think any reasonable attorney with knowledge of that that order's been entered is going to foresee the possibility of a claim. It doesn't require prediction with certainty. It only requires the possibility. And then third, with respect to this prejudice requirement, inserting a prejudice requirement constitutes rewriting the policy, which is completely improper. Claims made policies work, again, where the insurance company agrees to cover a claim or potential claim if it's reported during the policy period. At the end of the policy period, the insurance company can close its books on that period and it can say, we know we're not going to be liable for any prior claims that weren't reported. We know we're not going to be liable for any prior circumstances that a reasonable attorney could foresee a claim that weren't reported. And that way it can be more certain with respect to its calculation of the premium, its assessment of the risk. And as Washington courts have recognized, insurers generally enjoy lower premiums under claims made policies than occurrence based policies. And so to do that is prejudicial to the insurance company in the sense that it's giving an unbargain for coverage. I see I have two and a half minutes left. If there are any further questions, I would reserve that for rebuttal. Thank you. Mr. Huntington. May it please the court. I'm Dan Huntington and I represent the respondents, the Markham Group and Mark Camatomo in this matter. This case concerns the issue of coverage under a claims made and claims reported policy in a situation where an attorney had a series of annual claims made policies with the same insurance company. A claim was made and reported during one of those annual policies in the attorney's acts, which were the basis of the claim occurred during an earlier policy period. The case here does not undermine the purposes set forth for refusing to extend claims made coverage to claims first reported after the termination of a claims made policy. Which are you talking to now? Are you talking about the Mike clause and things you should have disclosed before the policy was open? Or are you talking about the prior policy where maybe a claim should have been made? Which were you speaking about? What I'm talking about is Mr. Camatomo's claim in this case has been made under the policy in the 2007-2008 year, when the claim was both made and reported to the company. And in this situation, Mr. Camatomo's coverage... And you're suggesting he didn't have to notify them before they issued the second policy. Is that correct? That's correct, that's correct. All right. And he didn't have to notify them because Mike doesn't mean anything. No, he didn't have to notify them, Your Honor, because under the language of the policy, he could not have reasonably foreseen that the circumstances might be the basis of a claim in this situation where... That's really interesting. Is that the rule for, you would say, for most policies and most lawyers? My client's case is dismissed because I was incompetent. My client's case is dismissed and I've had sanctions put on me. And I can't foresee that there might be a claim coming out of that. Would you apply that across the board to all claims made policies? I take it you would, huh? Your Honor, I would apply it to policies where at the time the claim is made and reported to the company, the underlying controversy is full appeal. I'm talking about the issuance of the second policy. So my client's case has been dismissed and has been dismissed and I've been sanctioned because of my incompetent handling of that case and my improper investigation, et cetera. And the lawyers admit either they were incompetent or they didn't investigate properly because one of their arguments was to quote, well, gosh, we thought we had done it, but they hadn't. We thought we had named the proper party, but they hadn't. So they were either incompetent or they were something. Trial court dismisses their case, puts sanctions on them for their behavior, and it shouldn't have occurred to them that that might give rise to a claim. Is that your position? That's my position under the circumstances of this case. And then they go on appeal, by the way, and on appeal, their appeal is so frivolous, they have sanctions put on them at that level. So the appellate court, at least, thought that it's ridiculous they even appealed to us. Right? Apparently, that's what the appellate court thought. But they shouldn't have foreseen that they might get a claim coming out of this dismissal. They shouldn't have foreseen that they might get a claim in this situation where the dispute, the underlying case, was on appeal at the time that they entered into their 2007-2008 policy period. Honestly, so you think that a lawyer who's had his client's case dismissed on him and had been sanctioned for it, as long as he files an appeal, the insurance company shouldn't even be interested in the fact that he's had this happen because he can say, gosh, I don't think I might get a claim. I mean, is it possible a client would sue me for this? You say, no, I don't think so, because I'm on appeal. Really, is that the legal rule you want established? The rule that I want to establish, Your Honor, is that in a case where in the underlying case, the attorney's case has been dismissed and he's been sanctioned, and he does not agree that that trial court decision was correct, and he appeals that case. So as long as he doesn't agree, then he can say to himself, well, I don't think I might get a claim from my client. Well, in addition, he discussed the trial court holding with his client. Oh, that's useful, isn't it? Did he hire another lawyer for her? Did he send her to another lawyer to discuss it? Not that I know of. No, he discussed it with her and said, you know what? This crazy trial court, I can remember partners of mine coming back and talking that way sometimes. This crazy trial court has dismissed my case. I can't remember sanctions being put on my partner, but this guy's getting involved. Dismissed our case and put sanction on us. And don't worry about it, though. We're going to take care of it on appeal, because I can tell you this trial court is nuts, and we're going to take it on appeal. And therefore, the client says, OK, well, good to go, Joe. You do it. And this lawyer shouldn't say to himself, there might be a claim coming out of this. No? No. No. OK. The attorney explained the trial court ruling to his client. He explained to the client why he believed the trial court was wrong, and that he had either filed suit against the correct party, or he should be allowed to amend his complaint. The client agreed with the attorney. The client understood the attorney was filing an appeal. That all goes to the question. And if the client had come to you as a third attorney, if the client had come to you and said, you know, this is what happened with my lawyer over there, and had come to you, you'd have said, you don't have a claim. Don't worry about it. You wouldn't have advised that client, you know, you better file something. There's a statute running, or maybe there isn't, because it's on appeal. But you know, you've got a real problem. They'd say, well, don't worry about it. The lawyer's got it on appeal. I don't know what I would discuss with a client under those circumstances, Your Honor. I guess not. OK, go on. In a- Counselor, here's my question. Your client discusses this matter with his client, and explains why he thinks that the district courts, or the trial court's order is not justified. He's going to take it to the Washington Court of Appeals. That's fine as to why the client then might not decide to sue him, or might wait to see until what happened before it occurred to the client that he might be able to sue his attorney. But why isn't it the obligation of the lawyer to go to the insurance company and say, look, this is out of an abundance of caution. We've got these sanctions. I want to tell you, the trial court is out of control. Everybody knows that wild man Smith, the trial court here, has got this reputation for just being a maverick and just throwing sanctions out. But I don't want the expiration of my policy to doom my claim with you, so out of an abundance of caution, I want you to know we've got it on appeal. Why isn't that a reasonable action for an attorney to take? And why doesn't the attorney have an obligation to do that? I'm sure the attorney in this case wishes he had done that. But the test is whether he could have reasonably foreseen that what had transpired by the time he started this new 2007, 2008 policy might be the basis of a claim. And in these particular circumstances, he had a client who had not expressed any dissatisfaction with his work. Yeah, but that client probably doesn't know that he's really sued the wrong party, and he's been told he sued the wrong party. And he had an opportunity to cure it and evidently didn't even file an amended complaint suing everybody in the alternative. I mean, it seemed like a very, very reasonable thing for an attorney to have done in those circumstances. In the material submitted to the district court, the affidavit of the attorney and the affidavit of the client was that it had been explained that what the basis for the trial court's ruling was and that the attorney didn't think the trial court was correct and was going to appeal it. So he explained this to his client, and then he put it on appeal. Now, in the respondent's brief, I've got the insurance company and the Shaheen case out of New Hampshire that dealt with situations where a case was dismissed in the trial court level during one in Professionals Direct. A case was dismissed on the basis that the insured attorneys filed an untimely motion for a new trial. The attorneys then appealed that trial court ruling, and that was dismissed by the Court of Appeals. These acts occurred during the first of two consecutive claims made policies. The attorneys then appealed that ruling to the Supreme Court, and the Supreme Court affirmed the dismissal of the case. Now, that occurred in the second of the two And the attorneys reported the claim after the Supreme Court ruling in the second of the two consecutive claims made policy periods. The insurance company argued there was no coverage under the second policy because the attorney knew of acts before the inception of that policy, which could reasonably have been expected to result in a claim. The court found that this policy language was ambiguous. The court found that under this policy language, the attorney would not know when he was supposed to notify the company. The court found that there was a question of fact as to whether the attorneys in that case acted reasonably, and the court noted that in these particular facts, the case remained pending at the time of the inception of the second policy because it was on appeal. And the court noted that the attorney's client hadn't indicated any intention to bring a claim against the attorney. That's the situation we have here. In the Westport versus Lilly case, the insured attorneys in that case received a plaintiff verdict that was substantially reduced by the jury because of comparative fault. The trial court granted a new trial, and the new trial resulted in a defense verdict. The attorney appealed both of these previous cases with the court and argued on appeal that the comparative fault instruction given to the jury in the first trial was in error. The appellate court found that because the attorney had not raised that issue with the trial court, it had been waived and affirmed the dismissal or the defense verdict in the second case. The appellate decision was issued during the third year of three consecutive claims made policies, and the attorney reported the possible claim to his company during that year after the appellate decision came out. In that case, the federal district court judge did not find that Westport's exclusion B was ambiguous. The court did apply the dual subjective objective test in applying exclusion B, but the court found as a matter of law that while the exclusion was not ambiguous, there was no basis to hold that the attorney knew of acts which might reasonably lead to a claim until the appellate decision was filed.  So in a case where an attorney has a client who hasn't expressed any displeasure with the services and still has the case on appeal, it's reasonable for the attorney to believe that there's not a basis for a claim until the resolution of the case through the appellate process. The other issue we raised is even if the court finds that Camatomo could reasonably foreseen the acts prior to the 2007-2008 policy year, the court should apply a notice prejudice rule and should not allow that exclusion unless the insurance company can show prejudice. Again, I cite the court to the Lilly case for an analysis. And granted, the Lilly court did not decide that case based on this argument. They left it open. But they did conduct an analysis of this argument. They said in Maine, where they had a statute providing that misrepresentations in an application for insurance may not prevent a recovery under a policy unless it was fraudulent or a material misstatement, that policy, that legislative policy, factored into determining whether- Counsel, you may want to wrap up here. You're over time. OK. I will. I laid that argument out in my brief, Your Honor. And I'll leave that to the court's review. OK, thank you. Your Honors, I'd like to address two points that were made by Mr. Huntington. First, he says that there was no complaint by the client with respect to this case. And I think it's a bit egregious for Mr. Kamatomo to suggest that he shouldn't have foreseen a claim because the client didn't complain to him. If you read Ms. Naidoo's deposition, she says over and over and over again that Mr. Kamatomo assured her that he had not made any mistakes, that he was sure that it would be reversed on appeal, that the trial court was wrong. I invite the court to look at the transcript. One quote is, I was just reassured that I think it was the naming of the party and that all the parties had been named and that they just keep reassuring me and it was in the naming and that the judge had made a mistake and we were going to get it reversed. Quote, they were pretty sure that the court had made a mistake and it would be an easy appeal, I guess. This is what they kept telling her. So of course she's not going to complain. She's not a lawyer. She doesn't know any better. They didn't refer her to a new attorney to evaluate whether there was a malpractice claim. With respect to the appeal, again, the policy doesn't require the prediction of claims with absolute certainty. It only requires a possibility. And in this case, on these facts, when you have a claim dismissed and sanctions entered because the court finds that the attorney fails to perform a reasonable investigation, that's a basis to foresee a possible claim whether you appeal that or not. And in fact, again, let's not lose sight of the fact here that Mr. Camatomo was sanctioned for appealing that decision. And in sanctioning Mr. Camatomo for filing the appeal, the standard that the appellate court applies is, quote, whether the appeal is so totally devoid of merit that there was no reasonable possibility of reversal. That's what the appellate court found. So for Mr. Camatomo to suggest that there was no way that this was going to be a claim because he had it all covered on appeal, I mean, not only was he wrong in that regard, the appellate court said no reasonable person could even have thought that this decision was going to be reversed. And therefore, he was sanctioned for that. So under these facts, in this case, we think it's pretty clear that the prior knowledge exclusion excludes coverage, and it does not require a showing of prejudice. Thank you. Thank counsel for the argument. Westport Insurance Corporation versus Markham Group is submitted.
judges: Fletcher B. , Fernandez, Bybee